`IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| KARI BOSWORTH, | ) | CASE NO. 1:20-CV-02691-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

**I.     Introduction**

Plaintiff, Kari Bosworth ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II.    Procedural History**

On October 2, 2018, Claimant filed an application for DIB, alleging a disability onset date of November 3, 2014. (ECF No. 10, PageID #: 234). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 10, PageID #: 199). On November 21, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 10, PageID #: 121). On March 3, 2020, the ALJ issued a written decision finding Claimant was not

1

disabled. (ECF No. 10, PageID #: 93). The ALJ's decision became final on October 16, 2020, when the Appeals Council declined further review. (ECF No. 10, PageID #: 73).

On December 2, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 14). Claimant asserts the following assignments of error:

> (1) The ALJ's decision that Claimant is not disabled pursuant to Listing 12.06 is not supported by substantial evidence
>
> (2) The ALJ did not conduct a proper evaluation of Claimant's symptoms pursuant to SSR 16-3p
>
> (3) The ALJ failed to fully and fairly develop the record

(ECF No. 12, PageID #: 649).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant testified she experiences full-blown panic attacks twice a month, as well as minor panic attacks that occur five times a day. The claimant said her panic attacks can last all day. The claimant also reported memory issues, as she forgets words and cannot focus on the person talking. The claimant reported diagnoses including depressive disorder, PTSD, and anxiety, and she indicated a history of physical, emotional, financial, and sexual abuse from her ex-husband. The claimant stated she has four children at home, and she naps twice a day. The claimant testified her current husband helps around the house, and her oldest daughter helps a lot as well. The claimant indicated she does not like leaving the house. The claimant reported use of a new medication. The claimant stated she last worked in November 2014 as a nurse practitioner at Southwest Hospital, where she evaluated patients and ordered and dispensed medications at a women's health office. The claimant indicated she stopped working because of depression, and she subsequently received short-term and long-term disability payments from her employer. The claimant testified she would require a one-hour break after a panic attack in order to get herself back together. The claimant said she keeps to herself because she does not want people

> to see her dealing with panic attacks. The claimant indicated her husband works outside the home and two of the children are homeschooled. The claimant said her younger children are ages three and five, and she confirmed she has not been back to work since the 5 year old was born. The claimant testified she sees Dr. Ormsby usually every four weeks, most recently the Monday before hearing. She indicated this treatment began in October 2018. The claimant reported current use of BuSpar and Effexor. The claimant testified she has kept up her nursing license, and she drives and tries to attend recitals for her daughter. The claimant confirmed she does not drink, smoke, or take medications that are not prescribed for her.

(ECF No. 10, PageID #: 102–03).

    B.    **Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> Mental health treatment notes from various providers dated December 2014 through August 2016 contain reports of daily anxiety, panic attacks occurring every few months, avoidance of places for fear of a panic attack, depression, crying, decreased energy, poor sleep, lightheadedness, dizziness, stressors, and feeling hot (Exhibit 1F, 2F, 3F, 4F). The claimant reported a history of trauma, namely emotional, mental, physical, and sexual abuse by her first husband, with ongoing nightmares of her ex-husband (Id.). Treatment notes indicate increased anxiety while anticipating the birth of her child triggered by thoughts of being in the hospital, as well as increased anxiety postpartum, following the birth of her child in February 2016 (Id.). The claimant also indicated a specific fear of driving on highways (Id.). Mental status examinations revealed an anxious, dysphoric mood, anxious, constricted, and/or blunted affect, defensive/anxious smiling and laughter, tearfulness, thought content focused on anxious, depressive themes, occasional distractibility, and only fair insight and judgment at times (Id.). However, the claimant was consistently alert, oriented, interactive, pleasant, cooperative, and neatly dressed and groomed, with appropriate eye contact, normal psychomotor activity and behavior, normal thought processes, speech, and perceptions, intact memory and cognition, and no suicidal or homicidal ideation (Id.). The claimant was diagnosed with panic disorder, agoraphobia with panic disorder, posttraumatic stress disorder (PTSD), generalized anxiety disorder, and major depressive disorder, recurrent, severe, without psychotic features, assigned global assessment of functioning (GAF) scores of 45 and 48, and tried on various medications, including increasing dosages of Lexapro, sertraline, clonazepam,

and mirtazapine (Id.). From December 2014 to June 2016, treating provider Jane M. Hellwig, Ph.D., consistently noted no progress with treatment (Exhibit 2F).

From October to December 2018, the claimant underwent primary care treatment with Douglas Potoczak, M.D., of Mercy Health (Exhibit 5F, 6F). The claimant reported a history of PTSD, panic disorder, and depression, with persistent anxiety and depression, despite use of Klonopin and Effexor prescribed by her current psychiatrist (Id.). However, the claimant indicated some improvement on medication (Id.). More specifically, in November 2018, the claimant indicated she was not ready to wean off clonazepam, as she tried skipping a dose of the medication and it did not go well; however, she reported feeling like she was improving overall, as she was doing well on the medication, and was sleeping better overall (Exhibit 6F/19, 23, 25). In December 2018, the claimant indicated some continued anxiety and depression, but admitted feeling overall much better since her psychiatrist increased Effexor (Exhibit 6F/34). The claimant presented as anxious throughout the course of treatment, as she was observed pacing, standing, and/or rocking back and forth throughout examinations; however, she was consistently alert and oriented, with normal mood, affect, and behavior (Exhibit 5F, 6F). Dr. Potoczak diagnosed the claimant with PTSD, depression, panic disorder, and anxiety, and refilled clonazepam .5 mg (Id.).

On April 18, 2019, the claimant underwent a pre-operative examination with Jenna Burcham, CNP, of Southwest General, at which time she reported current medications including buspirone 5 mg, clonazepam .5 mg, and venlafaxine ER 150 mg and 75 mg (Exhibit 10F/25-33). The claimant indicated she was married with four children, and currently a stay-at-home mom (Id.). Examination was unremarkable, as the claimant was alert and oriented, with clear, coherent speech, and an appropriate mood and affect (Id.).

Although the record contains references to recent mental health treatment with psychiatrist Dr. Ormsby (see Exhibit 5F/1, 7; 6F/2, 7; 8F; Hearing Testimony), the record is absent evidence of medical records associated with this treatment.

(ECF No. 10, PageID #: 103–04).

IV. **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

4

> 3. The claimant has the following severe impairments: panic disorder with agoraphobia, posttraumatic stress disorder (PTSD), generalized anxiety disorder, and major depressive disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to a static work environment, tolerating few changes in a routine work setting and when said changes do occur, they would need to take place gradually and would occur infrequently; limited to simple tasks, limited to routine and repetitive tasks; restricted from hazards such as heights or machinery, but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, and approaching people or vehicles; limited to occasional interaction with a small group of coworkers, where the contact is casual in nature; limited to occasional superficial interaction with the public, superficial meaning if a member of the public were to approach and ask directions to the nearest restroom, she would be able to provide such information, but that would be the extent of the interaction; not able to perform at a production rate pace (e.g. assembly line work), but can perform goal oriented work (e.g. office cleaner).

(ECF No. 10, PageID #: 99, 101–02).

V.  **Law & Analysis**

  A.  **Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.        Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

6

claimant has the residual functional capacity to perform available work in the national economy. *Id.*

    **C.**    **Discussion**

Claimant raises three issues on appeal. First, Claimant argues that the ALJ incorrectly determined that Claimant does not meet Listing 12.06—anxiety and obsessive-compulsive disorders. Second, she asserts that the ALJ failed to conduct a proper evaluation of Claimant's symptoms pursuant to SSR 16-3p—the regulation explaining how to evaluate symptoms. Third, Claimant states that the ALJ did not fully and fairly develop the record.

    **1.**    **The ALJ Properly Determined That Claimant does not Meet Listing 12.06**

Claimant argues that the ALJ's analysis of Listing 12.06 is flawed. As noted above, a Claimant has the burden of demonstrating that her impairment meets or equals a listed impairment. To meet Listing 12.06—the listing for anxiety and obsessive-compulsive disorders—a claimant must satisfy the requirements of paragraphs A and B or paragraphs A and C, discussed below. Claimant asserts she meets the criteria of paragraphs A and C. Thus, the Court will consider only paragraphs A and C. The ALJ did not discuss the paragraph A criteria. However, the ALJ reviewed the medical evidence and determined that Claimant did not satisfy the paragraph C criteria, precluding Claimant from meeting the Listing. The ALJ's decision as to whether or not a claimant met the requirements of a Listing will be affirmed if supported by substantial evidence. *See Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001) (affirming the ALJ's finding that the claimant did not meet the relevant listing where his decision was supported by substantial evidence). The Court will, therefore, consider whether the ALJ's findings regarding each criterion found in paragraph C was supported by substantial evidence.

Paragraph C requires:

7

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
>>
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 (internal citations omitted).

Claimant has a medically documented history of anxiety and panic disorder with agoraphobia. The ALJ concluded, however, that Claimant did not meet the requirements of C1 and C2. As for C1, the ALJ reasoned:

> [T]he claimant has sought relatively conservative outpatient mental health treatment alone, and she has not required emergency hospitalization or inpatient psychiatric care for mental impairment related deteriorations at any time (Exhibit 1F, 2F, 3F, 4F, 5F, 6F). Thus, the record fails to establish a reliance upon medical treatment, mental health therapy, psychosocial supports, or a highly structured setting to diminish the signs and symptoms of the claimant's mental disorders.

(ECF No. 10, PageID #: 101). Claimant argues that the ALJ erred in his reasoning because Listing 12.06 does not require inpatient care or hospitalizations. Instead, C1 is met because Claimant receives ongoing mental health therapy in attempt to diminish her symptoms. Commissioner does not appear to respond to this argument but merely states "As the ALJ noted, Plaintiff's psychiatric disorders were treated conservatively with counseling and antidepressants and Plaintiff never sought inpatient hospitalization." (ECF No. 14 at 6). The Court finds no support for the ALJ's contention that Claimant needed hospitalization or inpatient psychiatric care to meet the criterion. In fact, the regulations specifically provide that ongoing mental health therapy is sufficient to meet

8

the listing. Thus, the ALJ erred in making this C1 determination.

However, to be reversible error, Claimant must also show that the ALJ incorrectly concluded she did not meet the paragraph C2 criteria. Regarding C2, the ALJ stated:

> In addition, the record fails to demonstrate only marginal adjustment, as demonstrated by the claimant's intact ability to function outside her home. More specifically, although the claimant has reported significant difficulty leaving the home, the record indicates she is able to drive, shop for groceries for short periods of time at a nearby stores, go for walks with her family, occasionally attend church, and attend behavioral health and medical appointments (Exhibit 3E, 1F, 2F, 3F, 4F, 5F, 6F, 10F).

(ECF No. 10, PageID #: 101). Claimant argues she has received only marginal adjustment from her therapy and, therefore, satisfies the criteria. She argues that she experiences extreme fear and anxiety in public and the fact that she is able to drive, shop for groceries, go for walks, and occasionally attend church "should not be sufficient to overcome the overwhelming evidence" that she meets the criteria. (ECF No. 12 at 12). The Commissioner points the Court to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c) which provides that "'Marginal adjustment' means that your adaptation to the requirements of daily life is fragile." It also states that an ALJ "will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home . . . without substantial psychosocial supports." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c). The Commissioner asserts that the ALJ properly concluded that the medical record does not support a finding that Claimant's ability to adapt to the requirements of daily life is fragile or that she was unable to function outside of her home. The Court agrees.

The ALJ relied on the medical record and Claimant's daily activities to support his conclusion that Claimant is able to function outside her home. The fact that Claimant can drive,

9

grocery shop, and attend her daughter's recitals and church provides substantial evidence for the ALJ's conclusion. Claimant does not appear to contradict this. She simply states that this evidence "should not be sufficient to overcome the overwhelming evidence" that supports her argument. Claimant misunderstands the Court's role. The Court cannot reweigh the evidence. The Court considers only whether the ALJ applied the proper standards and supported his conclusions with substantial evidence. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [Claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Claimant did not demonstrate that there was not sufficient evidence in the record to accept the ALJ's conclusion but simply listed evidence that supported her position. Thus, Claimant's first argument is without merit.

### 2. The ALJ Properly Evaluated Claimant's Symptoms Pursuant to SSR 16-3p

Claimant next argues that "the ALJ fail[ed] to properly analyze and account for [Claimant's] symptoms in contradiction to the principals set forth in SSR 16-3p." (ECF No. 12 at 12). SSR 16-3p provides that when determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. In so doing, the ALJ should consider the evidence provided and, when relevant, these seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or symptoms; (5) treatment other than medication for

the relief of pain or symptoms; (6) any other measures used to relieve pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain and other symptoms. *Id.* at *7–8. The ALJ need not discuss all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). However, "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

After assessing Claimant's allegations of pain, the ALJ concluded that the "objective medical evidence does not fully corroborate the claimant's allegations." (ECF No. 10, PageID #: 103). The ALJ listed Claimant's diagnoses and recognized that her symptoms required limiting her to "simple, routine, repetitive tasks, without production rate pace, in a static work environment, with few changes in a routine work setting that take place gradually and occur infrequently, with occasional interaction with a small group of coworkers, where the contact is casual in nature, occasional superficial interaction with the public . . . and no hazards such as heights or machinery."

11

(ECF No. 10, PageID #: 104). However, the ALJ determined that "in light of the limited, conservative treatment record and the mainly mild to moderate examination findings, the claimant's impairments are not as debilitating as she has alleged." (ECF No. 10, PageID #: 106). The ALJ explained:

> The claimant's activities of daily living detract from her allegations of totally debilitating impairment, and instead support the foregoing residual functional capacity. The claimant has indicated limited activities, as she naps twice a day, has difficulty leaving the home, and family members, including her husband and oldest daughter, help with household chores, grocery shopping, pet care, and childcare (Exhibit 3E, Hearing Testimony). However, the claimant is able to care for her personal hygiene, prepare full meals, do some household chores, including laundry, cleaning, and pulling weeds, with breaks, drive, shop for groceries in a nearby store for short periods, shop online, handle money, socialize with her husband and children, go for walks nearby the home, watch movies, do some journaling, play video games (Angry Birds), occasionally attend church, and help care for a pet dog when needed (Id.). In October 2018, the claimant admitted that while her teenage daughter helps with childcare, she gets the children fed, bathed, and dressed (Exhibit 3E). In April 2019, the claimant indicated she was a stay-at-home mom, indicating a volitional nature to the claimant's current lack of employment (Exhibit 10F/26). Since the claimant stopped working in November 2014, she has had two children, and she currently home schools her 12 and 5 year old daughters (Hearing Testimony). In sum, the claimant's activities, while perhaps somewhat restricted, nevertheless confirm she is not as limited by mental impairment as alleged.
>
> In assessing the claimant's allegations, the undersigned has also considered the scope of treatment. The record contains evidence of regular formal mental health treatment with several different providers from December 2014 through August 2016 (Exhibit 1F, 2F, 3F, 4F). Despite increasing medication dosages, the claimant remained symptomatic, reporting persistent symptoms, and demonstrating consistent psychiatric abnormalities on examination (Id.). Primary care treatment notes from Dr. Potoczak from late 2018 confirm ongoing psychiatric symptoms, and the claimant remained overtly anxious on physical examination (Exhibit 5F, 6F). However, the claimant admitted improvement with use of medication prescribed by a treating psychiatrist (Id.). . . . [A] recent physical examination conducted in April 2019 did not reveal an[y]

> psychiatric abnormalities (Exhibit 10F/25-33). Despite the claimant's history of mental impairment, she does not appear to have required psychiatric hospitalization or more extensive treatment, like participation in a partial hospitalization program, at any time (See Exhibit 1F, 2F, 3F, 4F, 5F, 6F, 8F). This evidence suggests the claimant's mental impairments, while severe, are adequately controlled with relatively conservative outpatient mental health treatment.

(ECF No. 10, PageID #: 105–06).

Claimant first states that the ALJ "concedes [Claimant] has daily panic attacks, avoidance of places, decreased energy, and poor sleep" and that she has anxiety, dysphoric mood, tearfulness, and other severe symptoms. (ECF No. 12 at 14). Claimant also notes that the ALJ agrees that Claimant is compliant with treatment but still struggles with anxiety. These facts, Claimant argues, "lend credence to [Claimant's] credibility." (ECF No. 12 at 14). The ALJ's stated reasons, she alleges, are "extremely selective" and "are also not sufficient grounds to discredit" Claimant's subjective complaints. (ECF No. 12 at 14, 16). The Commissioner responds that the ALJ properly concluded that Claimant's allegations of pain were not as debilitating as alleged because she received only conservative treatment and her "psychiatric evaluations yielded benign findings more often than not." (ECF No. 14 at 8–9).

The ALJ's decision is supported by substantial evidence. The Court first notes that the ALJ did consider Claimant's subjective allegations and concluded that they required certain limitations. The ALJ ultimately determined, however, that the other factors listed in SSR 16-3p were inconsistent with a finding of total disability. The ALJ started with Claimant's daily activities, reasoning that they supported his RFC. Indeed, Claimant homeschools her 5- and 12-year-olds, drives the 12-year-old to a coop on Fridays that is 20 minutes away, grocery shops, and helps take care of her children, herself, and their dog when necessary. The ALJ reasonably determined that these activities are inconsistent with total disability. Additionally, the ALJ found that Claimant's

13

admitted improvement with increased medication and conservative treatment were inconsistent with her allegations. *See Dunn v. Comm'r of Soc. Sec.*, No. 1:15-cv-176, 2016 WL 4194131, at *9–10 (S.D. Ohio July 15, 2016) (considering effective treatment inconsistent with claimant's allegations of pain). Because both her improvement with treatment and daily activities were inconsistent with Claimant's subjective allegations, the ALJ was free to determine that Claimant's symptoms are less likely to reduce her capacity to perform work-related activities. The Court is, therefore, satisfied that the ALJ properly discharged his duties under 20 C.F.R. § 404.1529(c) and SSR 16-3p and his conclusion was supported by substantial evidence.

Notably, Claimant appears to argue that the ALJ selected only the evidence that supported his conclusion and ignored the evidence that supported Claimant's argument. However, "[t]he problem with a cherry-picking argument is that it runs both ways. [Claimant] argues the ALJ only focused on the positives, whereas [her] brief emphasizes the negatives. Crediting [Claimant's] argument here would require the Court to re-weigh evidence — which it cannot do." *Colvin v. Comm'r of Soc. Sec.*, No. 5:18 CV 1249, 2019 WL 3741020, at *14 (N.D. Ohio May 8, 2019). The Court is limited to determining whether the ALJ applied the proper standards and supported his findings with substantial evidence. As discussed above, the Court finds that the ALJ properly considered Claimant's subjective allegations and substantial evidence supports the ALJ's conclusions. Thus, Claimant's second argument is without merit.

### 3. The ALJ Fully and Fairly Developed the Record

Claimant argues that the ALJ was missing "significant evidence that supported [her] disability." (ECF No. 12 at 16). Absent special circumstances, "the claimant bears the ultimate burden of proving disability." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citations omitted). This includes the "burden of providing a complete record, defined as

evidence complete and detailed enough to enable the Secretary to make a disability determination." *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citations omitted). However, even absent special circumstances, the ALJ has a duty to develop the factual record upon which his decision relies. *See Thrasher v. Comm'r of Soc. Sec.*, No. 1:12-cv-151, 2013 WL 486123, at *3 (S.D. Ohio Feb. 6, 2013). Determining whether the ALJ failed to fully develop the record is made on a case-by-case basis. *See Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983) ("There is no bright line test for determining when the [ALJ] . . . failed to fully develop the record.").

On November 14, 2019, before the hearing, Claimant's counsel informed the ALJ that he requested updated records from Pathways Counseling Center ("Pathways") and University Hospital Southwest General Hospital ("UH") on September 25, 2019 but had not yet received them. (ECF No. 10, PageID #: 119, 329). Counsel requested that the record be held open post-hearing for submission of the requested records. (ECF No. 10, PageID #: 329). At the hearing, Claimant's counsel told the ALJ that the file was not complete because they were waiting on a "few more records" from Pathways and UH. (ECF No. 10, PageID #: 124). Counsel stated that the requested records consisted of updated treatment records regarding Claimant's mental health, recent treatment, medication compliance, and medication history. (ECF No. 10, PageID #: 124). The ALJ agreed to hold the record open until December 9, 2019. (ECF No. 10, PageID #: 125). On December 13, 2019, after counsel made three unsuccessful follow up attempts with UH, Claimant's counsel requested that the ALJ issue a subpoena for the requested documents. (ECF No. 10, PageID #: 119). Notably, counsel only requested a subpoena for UH and not Pathways. (ECF No. 10, PageID #: 119). On December 20, 2019, the ALJ issued a subpoena ordering UH to produce the relevant medical documentation. (ECF No. 10, PageID #: 116). In his written decision,

15

the ALJ admitted two additional exhibits produced by UH that were received after he issued the subpoena. (ECF No. 10, PageID #: 96, 520, 615).

Claimant, however, argues that after the ALJ issued the decision "no additional records were received." (ECF No. 12 at 16). The Commissioner correctly responds that Claimant is factually incorrect. As discussed above, after the ALJ issued his subpoena, UH produced two sets of records. The Court fails to understand how the ALJ therefore erred, and Claimant does not progress her argument any further or reply to the Commissioner's response. The Court, thus, finds no error regarding the UH record development.

Claimant additionally argues that the ALJ had a duty to assist Claimant in obtaining treatment notes from Dr. Lindsey Ormsby. Claimant testified at the hearing that she started seeing Dr. Ormsby in October of 2018 and saw her every four weeks. (ECF No. 10, PageID #: 145). When discussing the relevant medical evidence, the ALJ stated "Although the record contains references to recent mental health treatment with psychiatrist Dr. Ormsby (*see* Exhibit 5F/1, 7; 6F/2, 7; 8F; Hearing Testimony), the record is absent [of] evidence of medical records associated with this treatment." (ECF No. 10, PageID #: 12). When discussing opinions, the ALJ discussed Dr. Ormsby's medical source statement that was in the record. The ALJ found the opinion not persuasive for multiple reasons, including that it was unsupported. The ALJ stated: "Although somewhat supported by the narrative discussion contained therein, the opinion is inadequately supported overall, as the record is entirely absent [of] Dr. Ormsby's own treatment notes." (ECF No. 10, PageID #: 107). Claimant argues that the ALJ had a duty to assist Claimant in obtaining this medical evidence. The Commissioner responds in a footnote that Claimant only requested a subpoena for the UH records and Dr. Ormsby does not practice at UH. "Thus, although [Claimant] solicited an opinion from Dr. Ormsby in support of her disability claim, it does not appear that

16

[Claimant] has any record of treatment with Dr. Ormsby." (ECF No. 14 at 11 n.3). The Commissioner also alleges that Claimant stated at the hearing that the record would be complete after receiving the records from UH. The Court notes, however, that this is incorrect. Claimant stated that she was waiting for records from UH and Pathways.

Importantly, while she states that the ALJ was "missing significant evidence," Claimant does not argue or cite any caselaw to indicate that the absence of Dr. Ormsby's treatment notes led to a gap in the medical record. *See Kendall v. Astrue*, No. 2:10-263-DCR, 2011 WL 4388794, at *5 (E.D. Kentucky Sept. 20, 2011) ("Where there are obvious gaps in the record, the ALJ has a duty to develop the administrative record with respect to missing evidence." (citing *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000))). Instead, she argues 20 C.F.R. §§ 404.1512, 416.1444 required the ALJ to make reasonable attempts to obtain evidence pertinent to the matters at issue.[1] 20 C.F.R. § 416.1444 states that the ALJ will look fully into the issues at the hearing and may stop the hearing temporarily if he finds that there is material evidence missing. Additionally, 20 C.F.R. § 404.1512(b) provides:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports.

---

[1] Claimant also relies on HALLEX § 1-2-6-56, which is extremely similar to the regulations Claimant cites. However, because HALLEX is not binding on this Court and the conclusion would be the same, the Court focuses on the regulations. *See Stires v. Comm'r of Soc. Sec.*, 2:17-cv-811, 2018 WL 3237673, at *7 (S.D. Ohio July 3, 2018) ("Even if the ALJ had failed to comply with HALLEX procedures, remand would not be automatic because HALLEX is not binding on this Court, and Plaintiff has failed to sufficiently articulate prejudice attributable to any such noncompliance.").

While neither party fully develops their argument, the Court concludes the ALJ did not violate 20 C.F.R. § 404.1512 or 20 C.F.R. § 416.1444. Claimant filed for disability in October 2018 and started seeing Dr. Ormsby that same month. There is no evidence missing from the 12 months preceding October 2018. Additionally, Claimant never gave the ALJ permission to request the treatment notes, as required before the ALJ could attempt to make every reasonable effort to help get them. *See Webb v. Comm'r of Soc. Sec.*, No. 2:16-cv-10015, 2017 WL 1164708, at *3–4 (E.D. Mich. Mar. 29, 2017) (concluding that the ALJ did not err by failing to obtain medical evidence the claimant informed him of but did not request his assistance "in carrying out this record gathering"). When Claimant did request assistance, the ALJ was willing to hold the record open and issue subpoenas, as evidenced by his actions regarding the UH records. In fact, the ALJ held the record open past the date he agreed to at the hearing in order to admit the UH exhibits. The Claimant, however, did not ask for assistance obtaining Dr. Ormsby's treatment notes. Accordingly, the Court finds no reason to disturb the ALJ's decision.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: December 1, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).